Okay, the next case is number 2011-1369, ELCOMMERCE.COM v. SAP AG. Mr. Benzie. Thank you, Erin. The threshold issue in this case is whether or not the Eastern District of Pennsylvania was able to enter a valid judgment against my client, ELCOMMERCE. The facts are these about personal jurisdiction. I have a question before you get to that. You sent a letter to the court on May 2nd. Excuse me, I'm sorry. You sent a letter to the court on May 2nd. I don't believe we did. Oh, I'm sorry. I'm sorry, the response to the NOAA system. That's right. And you say, unlike in NOAA systems, the invention at issue here need not be implemented in a general or special-purpose computer. The only evidence that the invention may involve software is the patent statement that the data transfer engine, DTE, is, quote, preferably implemented in software. Correct. I found that bothersome because in your opening and reply claim construction briefs, you called the DTE, the DCS, and the publisher, quote, particular software or computer structures and said that they are, quote, special-purpose structures. Tell me what the claimed invention looks like. How is it implemented? Walk me through it. The claimed invention is a system or a method for monitoring and supply chains. Is it somebody standing there or is there a computer? No, you can use machines. You can use general-purpose computers to implement the invention. You can put the DTE, the software DTE, into general-purpose computers at the various sites. Is the DTE software? It can be software or it can be, the DTE can be a machine. What machine would it look like? The machine is just a machine that allows you to extract data, to monitor data, to scan data, that sort of thing. A special-purpose machine. Non-electronic? I share that concern. We're not talking about programmed equipment that does whatever it's supposed to do? Yes, it can be programmed equipment that does what it's supposed to do. It must be. Isn't that right? How do you do this without some sort of computer? I'm not an expert. Well, you. I too was confused by that statement. Are we going back to the pre-computer days of adding machines? People? There's various types of machines that can detect when someone sends some information in, that can detect when there's a change, let's say, in the supply. Let's say there's a number of microprocessors being produced. That can be sent. Now, does it involve electronics? Of course it does. But I believe that there are machines by which these various functions can be performed. Likewise, there are software that can't perform these functions. Would we call such a machine a computer? I think that you could call it a computer. Well, would it be a special-purpose computer then? Because you're saying not. I'm saying that there's a specific... That's what upset me about this thing. The specific-purpose thing that we're talking about is a DTE. My understanding is that can be implemented in hardware or software. The statement that says it's preferably implemented in software tells you that it can be implemented in hardware. It's just hardwired. Like I said, I'm not an expert in this field. But regardless of all that, we point to algorithms for each one of the functions throughout our claim construction brief, and the district court did not address any of those algorithms. Now, the fact that my understanding is it can be implemented in hardware, speaking with the inventor and the other people that are skilled in this area, I don't know exactly what those machines are, but they tell me that it can be. Now, what we have to do is we have to look at this from the perspective of one of ordinary skill in the art. Regardless of that, the fact remains that we put in substantial evidence of where the algorithms exist within the specification, and then from that point forward, it was up to SAP to say those algorithms did not, to prove by clear and convincing evidence from the perspective of one of ordinary skill in the art, that those algorithms did not meet that particular means plus function element. In other words, it wasn't corresponding structure. But doesn't that shift the burden of going forward, the burden of persuasion to back and forth, to say, no, yes, it does. Here, it tells you this and that. And algorithms relate to the program, does it not? Whether it's software or hardware, it tells the computer what to do. That's right. So you're saying that there was no obligation to come back and say you're wrong, this is how the algorithm implements this particular clause in the claim? Your Honor, I think the primary thing here is this. It's SAP's obligation to come forward with evidence from the perspective of one of ordinary skill in the art, that those algorithms do not meet, are not corresponding structure. They presented absolutely no evidence from that perspective that these algorithms did not meet that limitation. Instead, they only provided attorney argument. There is nothing in there from the perspective of one of ordinary skill in the art. I believe that... Are you saying because they presented their argument through the attorney rather than through an expert witness, for instance, that that was the fatal flaw? No, I think that the fact that they did not present any evidence from the perspective of one of ordinary skill in the art, whether it's a deposition testimony from one of ordinary skill in the art, or from a declaration from one of ordinary skill in the art, or from an expert, they had to come forward with evidence from that perspective. Without evidence from that perspective, you have nothing. It's just simply attorney argument. The fact that the specification says X, you must have that interpreted from one of ordinary skill in the art. You cannot have it interpreted just by a lawyer. Someone has to come in and say, the algorithm that they point to here is not corresponding structure because... They have to introduce that evidence. Once that evidence is introduced, then the burden might shift to El Commerce to say, wait a second, that is evidence, and you come in with a witness that says it's a corresponding structure. But what SAP failed to do here is they did not come forward with any evidence from that perspective. They admit that. That's, I don't believe, disputed at all. So we introduced, and if you look at, I believe it's a... Throughout that portion of our briefing at the claim construction proceeding, we set forth in very specific detail... Every time, for every means plus function element, we set forth specifically what particular structure was involved and then also how it was linked and thirdly, that there was an algorithm that showed various ways that that corresponding structure was met. So throughout, if you look at our briefing, starting at 869 through 893, we do that. If you then turn to SAP's briefing, and that's at A3197 through 3210, you don't see any evidence from the perspective of one of ordinary skill in the art. All they do is they argue, and they argue based on what the specification says. They argue that there is no corresponding structure or that what we identified as corresponding structure was not a corresponding structure. So what the district court did was they turned the burden on its head. The district court eventually said that it was up to Elk Commerce to show that there was corresponding structure. But if you look at... Go to Atmel, Moody v. Harley-Davidson, Allboys, all of those cases talk about that when someone like SAP comes in and says that a claim does not have supporting 112.6 structure, they must do that by clear and convincing evidence. That's their initial burden, not ours. And they didn't come in. They came and they went through the specification. But they didn't show how from the perspective of one of ordinary skill in the art, those particular algorithms and structures that we identified did not meet the corresponding structure limitation for 112.6. Not one place in their retort to our claim constructions do they put that from the perspective of one of ordinary skill in the art. They only argue it. And that is a critical distinction here. We brought up this issue, by the way, all the way back in discovery. We asked where's your evidence of one of ordinary skill in the art that the claims are invalid under 112.6. Never have they produced a single witness. And there's a reason for that. The reason is this. They presented in the re-exam that all the claims were invalid as anticipated or obvious. Now, they can plead in the alternative. And that's perfectly okay. But what they can't do is avoid the consequences of doing that. The consequences are these. They're saying that those elements, each one of those means plus elements, are definite when they're telling the PTO and the district court that they're anticipated or obvious. So we had a body of information. We put forth to SAP. And we said, here it is. Tell us why we're wrong. It's their obligation to show why one of ordinary skill in the art wouldn't understand that each one of these claims is met. Another important factor is this. Excuse me. Before you run out of time, do you want to say anything about the jurisdiction question? Sure. On jurisdiction, that's a threshold issue  And what happened in this case is this. It was filed in the Eastern District of Texas. Venue and personal jurisdiction were proper over SAP. They admit to that. The moment they filed their answer and brought their D.J. counterclaim for invalidity, non-infringement, and unenforceability, they immediately moved the court to transfer the case. What was the effect of their filing the D.J. against you in their answer? Does that make you a defendant? Yes, it does. We're a counterclaim defendant in that court. But isn't the jurisdictional position you're in make you a plaintiff and defendant? Yes, it does. It does. So the fact that you're made a defendant may not be definitive? I don't believe that that's necessarily definitive, but I believe that under Hildenbrandt, what happened in Hildenbrandt was this. The district court, the defendant stack filed a case in the Southern District of Ohio. Nine days later, Mr. Hildenbrandt, the patent owner, filed a patent infringement action in the District of Colorado. When the case in Colorado was then transferred to the Southern District of Ohio, Mr. Hildenbrandt said, I'm not playing in this game anymore. And then the District of Ohio did an analysis and found that there was personal jurisdiction over Mr. Hildenbrandt and entered a default judgment against patent infringement action. And then they also entered a declaratory judgment that the patent was invalid and unenforceable, I believe. And so the case in Hildenbrandt, the court came in, this court came in and said, can't be because... Let's assume for argument's sake, Mr. Benson, that no counterclaim had been filed. That it was simply a case in which, excuse me, you as plaintiff brought the suit in Texas they promptly moved for transfer and it gets moved to Pennsylvania. Does that change your position any in terms of the jurisdictional issue? I don't believe so. Because a judgment can be entered against El Commerce in the Eastern District of Pennsylvania that would be adverse to them. A judgment that the patent was not infringed or that the patent... It cannot be entered? Well, no, excuse me. A judgment then, once the case is transferred to the Eastern District of Pennsylvania, that court could, based on the merits of a claim... It would have jurisdiction over you? I don't believe so. Well, sorry, I misunderstood. I thought you were saying that the Pennsylvania court could enter a judgment against you. Well, we'll put it this way. I'm not saying that there's personal jurisdiction. What I'm saying is... Well, they can't enter a judgment against you if there's no personal jurisdiction. That's true, but they still do it. And that's the error. But that's not the question, whether they still do it. The question is whether they legally can do it, right? Now, my hypothetical question is simply this. Let's assume there was no counterclaim against you so you were not made a defendant. Right. Let's assume you're simply a plaintiff in the Texas action, which gets transferred to Pennsylvania. Right. You're still a plaintiff. When you're a plaintiff walking in the court, you concede personal jurisdiction as a matter of law, right? No. No, we didn't. Plaintiffs who walk into court concede jurisdiction as a matter of law. You conceded jurisdiction, personal jurisdiction, when you walked into the Texas court. Does that go with you when you walk into the Pennsylvania court assuming no counterclaim? No. That jurisdiction was only for the Eastern District of Texas, where we consented to jurisdiction. We did not consent to jurisdiction in the Eastern District of Texas. Your position is you don't have to consent, even if you're a plaintiff, when you get transferred to another venue. Correct. It doesn't matter whether they did a counterclaim making you a defendant or not. Correct. Okay. I just wanted to understand your position. Okay. We'll save you rebuttal time. Thank you. Mr. Morris. Good morning, Your Honor. Please, the court. I suppose I'll start out with the personal jurisdiction issue because that's where we left off, and our view is that this court decisively and dispositively answered this issue in the Genentech case. In the Genentech case, the direct question was asked because the district court had not answered the question in the Genentech case. And included as part of this reason denying transfer as to whether or not there had to be personal jurisdiction over a plaintiff in a transferee circumstance. And this court found that there is no requirement that the transferee court have personal jurisdiction. Does that make sense? It follows the statute, first of all, under 28 U.S.C. 1404A, that it can be transferred to any jurisdiction in which the action could have been brought. That is not a violation of due process, Your Honors. When this court analyzed the Genentech case, it explained and it cited the cases with approval that laid all of that out. For example, in the Murray case, which the Genentech case cited with approval, it explained that when a plaintiff starts the fight, picks the fight, and decides on a venue and initiates the case in that venue, then there is no due process violation. There is no international shoe problem with having the case that he filed, that the plaintiff filed, transferred to another jurisdiction. That's a different... Excuse me. Damn allergies. That's a different statement, Mr. Moran, from the statement that it's not necessary for the transferee court to have personal jurisdiction over a party that is before it about which it is going to make a judgment. I agree that it's a different statement. You can make the statement, perhaps, that the transfer carries with it the conceded jurisdiction from the original court, and that that may not be a denial of due process. But is it your statement that it doesn't matter whether the transferee court has jurisdiction? That's irrelevant. Is that your position? Absolutely, my position, Your Honor. And that's what the Murray court said. The Murray court made clear that the transferee court, and Genentech cited it with approval, doesn't need to have jurisdiction over the plaintiff. Let's take an example, Your Honor. How can you have a judgment against a party without having jurisdiction over that party? Because the case initiated, it's all a question of due process. The case was initiated by the plaintiff, and the plaintiff initiated that case. He started this fight by throwing it into Texas. What Genentech found, and quoted Murray with approval, is that once the plaintiff picks that fight, if it gets transferred properly under the other circumstances, their due process rights have not been violated. The Murray case is very specific on this. Let me give you an example, Your Honor, about if the case were any different, what the ramifications would be. A non-practicing entity, a company with no other ties anywhere else, that's just formed for patent litigation, could pick any venue and incorporate there, just drop its company in that venue. It could be Nevada, Colorado, Arizona, wherever it might be. Under their view of the law, the court would have no power, no matter how much more convenient another jurisdiction were, no matter how much more it were in the interest of justice to be in another place where all the parties were, even the inventors were. Under their view, the court would be powerless to transfer it anywhere else. NPDs could game the system and bring cases wherever they wanted with impunity. The Murray court makes the point, Your Honor, and they actually cite to an interesting case, now that you bring up that issue, the Phillips Petroleum Supreme Court case, that says, unlike subject matter jurisdiction, where it's part of an Article 3 aspect of things, personal jurisdiction comes from the idea that you have to have due process. And the Murray court makes the analysis very clear that when you have a 1404 analysis, the statute itself, Congress, provides that due process. The court can't just transfer a case willy-nilly. Your Honor, the court has to look by statute at the convenience of the parties, the convenience of the witnesses, and the interest of justice. They get that procedural due process. But that's easy enough to understand if you say that under the law and consistent with due process, the plaintiff's concession of personal jurisdiction carries with it to the transferee court. I have no difficulty with that. I have some difficulty with your saying, well, it doesn't really matter whether Pennsylvania had personal jurisdiction or whether Alaska had personal jurisdiction or Germany had personal jurisdiction. Personal jurisdiction doesn't matter. Let me read to you from your red brief a moment. You make this statement on page 55. The district court in Texas would have applied the same law as was applied by the district court in Pennsylvania. Moreover, as Elk Commerce emphasizes, both plain construction and indefiniteness are questions of law reviewed de novo by this court, making the origin of the decision immaterial to the outcome of this appeal. You seem to be suggesting that it doesn't matter whether a district court ever has jurisdiction over a patent case because as long as it comes up here, we can decide it and the law is going to be the same throughout the country. You don't mean that, do you, Mr. Moran? I don't mean that at all, Your Honor. I hope not. Yes, Your Honor. Thank you. I don't mean that at all. What do you mean? What I do mean, Your Honor, is this. When a plaintiff brings a lawsuit against a defendant, there certainly is the recognized law under international shoe and under the Supreme Court precedent that says that there has to be personal jurisdiction over the defendant in that lawsuit. There's certainly... And there has to be personal jurisdiction over the plaintiff. Well, the plaintiff waives by going into the court, but I agree. He concedes personal jurisdiction. He does, Your Honor. That's important. It is important. It's not by the way... Because plaintiffs or parties can go before the court and say we're not conceding jurisdiction, we want to appear before this court to point out why we're not involved. They can do that, can't they? They can in limited circumstances. But that isn't what happened here. They conceded jurisdiction. They conceded jurisdiction in Texas. Correct. They waived jurisdiction by going into that court. That's correct, Your Honor. They don't waive jurisdiction. They conceded. You can't waive jurisdiction. You can't waive subject matter jurisdiction. I might differ with you, but it's not my day-to-day Ballywick. I think you waive personal jurisdiction. You can never concede subject matter jurisdiction. This court would have to address subject matter jurisdiction no matter what the case. I guess the point is this, Your Honor. Genentech, we believe, dispositively decided the case in no uncertain terms. I could briefly talk about Hildebrand, if you'd like, Your Honor, if you're all troubled about it, because that's the only case that they rely on. We cite nine cases in our blue brief where the courts have said that there doesn't need to be personal jurisdiction over the plaintiff in the transferee forum. They cite to one case Hildebrand. That's a very particular case and plays right into what you're talking about, Judge Plager. The first case there was filed in Ohio. It was a declaratory judgment action against the plaintiff. The second case was transferred only because of the first filed rule. In other words, when the patentee decided to file his lawsuit in Colorado, it was transferred for one and only one reason. Not like here where it was a more convenient venue for the parties, for the witnesses, and the interests of justice. It was filed because of the first filed rule. The fact that it was a transfer case was brought up by this court once. In that entire opinion, it was in the background section. From then on, it was analyzed as the plaintiff case where there was no question that that case had to have personal jurisdiction over the patent owner as the defendant. And when they reached the final conclusion, I will concede this, they dismissed both judgments. They vacated both judgments together. And that makes some sense. If it was only transferred because of the first filed case, and that case should have never been brought in the first place, then it makes some sense to vacate both judgments. I agree that that's what happened here. The court never addressed, the word transfer doesn't come up after the background section, never addressed the issue that was hit head on in the Genentech case. And the Genentech case dispositively decides this issue. Like I said, you would have the situation where NPEs, non-practicing entities, could file anywhere with impunity. And the idea that their due process was violated, when they left Massachusetts forum shopping for Texas, where they had no connections, farther away from home, because that Texas court went through a thorough analysis, said that all the witnesses were up north, it was more convenient for all parties, and the interest of justice demanded it, that is due process, and that's what the Genentech case and the Murray case talk about. I'd be happy to talk about that more, Your Honor, but perhaps you'd like to talk about the means plus function issues? Yeah, let's switch to means plus function. Please, Your Honor. The important thing here, Your Honor, is that it's just as you pointed out, Judge Wallach, from the letter that we received last week. They said all throughout their briefs at the district court that we're talking about a situation here where it's implemented on a computer, where it's software. And that's not by coincidence. There are two statements I'd like to point you to. The first is in the specification, where it says that the DTE is preferably implemented in software. That's what it says. But let's accept that. Yes. Where does the problem arise in terms of their corresponding structure? The problem that arises in their corresponding structure is this, Your Honor. No matter what your views would be as to how much structure may be required in a software means plus function case, this court's precedent is clear on one thing. That's from the NOAA Systems case and the Aristocrat case, and numerous other cases, WMS Gaming, Your Honor, that when you're dealing with a software situation, and when you're dealing with a special-purpose type of computer like this, where they say, by the way, Your Honor, in their specification that, quote, some custom programming is required. They say that. When you're dealing with that, you have to have an algorithm. That much is clear. But an algorithm doesn't have to be very much. For programming instructions, you just... We have case after case. We have diverged in our cases. But there are many where you just have to fill boxes for each function and recite in a sentence or so what happens at each stage. And when those are procedures that can routinely be programmed by a programmer, then the algorithm is satisfied. At the low watermark where you talk about a situation like that, where some of the cases have said, for example, that that's enough, where you might have a sentence laying that out, I understand you might have some situations like this. This is not such a case. I would encourage you, as I'm sure you all have, to read the district court's very well-reasoned decision. All of the things that counsel, my colleague over here, pointed to in the appendix from being from their brief, the judge dealt with. Twelve pages on means-plus-function analysis. And what he came to time and again is the very reason that they can say that there's an algorithm up here, and they can say that there's an algorithm in their brief, but they can't identify it, that Mr. Benson will not be able to identify an algorithm for you for scanning for changed data. Why is that, for example? All he can point to is a black box that says DTE. It's no different than in Blackboard. It's no different than in Blackboard, where you had another situation where it was a black box. What happens here is all they do is they point to, on something like scanning for changed data, or something like extracting the data, the only structure, Your Honor, that they point to, that they say is structure, is a box that says DTE. And when you get to that box... But he says that the burden is on the challenger to establish, or at least to present some sort of evidence that a person of ordinary skill looking at this wouldn't know just what to do. They do say that, and I will tell you this. In terms of the burden of invalidation. The burden of invalidation is absolutely on us by clear and convincing evidence. And this report pointed that out. But what he found is, and what is completely accurate in this case, is he followed the credit proof default systems case and the aristocrat case, and he would have followed the NOAA systems case if it had come out by then. And all of those cases say one thing, Your Honor, which is once you identify a structure in the specification, the sufficiency of that structure, Your Honor, whether that sentence or two is enough to teach someone a skill... You're not answering my question. You're saying what he didn't do. Right. He says that the burden was on you to come forward with at least some sort of primitive, something or other, that what was there was inadequate, and that what he got was your argument. Yes, and the burden is on us to come forward with something, and here's what we came forward with, that the specification discloses no algorithm. It's not a question of the sufficiency of the algorithm. Because all he got was an attorney argument  that that's not evidence, and I think that that's correct, is it not? Attorney argument is not evidence. The specification is evidence, Your Honor, and the specification contains no algorithm. The court was able to find that. This court, one month ago, in the NOAA systems case, had an exact same situation. It's almost eerily similar to our case. It's out of Pennsylvania, too, of all coincidences. And in that case, the plaintiff said the same thing that our colleagues over here are saying. Your argument comes down to a proposition that there's a preliminary step before the burden of invalidity proof is put on the alleged infringer, and that preliminary step is for the court to determine whether there is any structure at all that reflects or responds to a means-plus-function claim. Is that your position? You've said it much better than I have, Your Honor. The NOAA systems case and the aristocrat case also said it. And you're saying that the court should make that determination solely on attorney argument without any evidence by either side, just by reading the specification and saying, I know it when I see it? Absolutely, Your Honor. When you say solely from attorney argument, the focus is on the specification, Your Honor. I think we haven't gone quite that far in our cases. I would very respectfully disagree. The NOAA systems case says very clearly, one month ago aristocrat says the same thing, that the world is divided into two aspects in means-plus-function. NOAA systems says you have a first category where you have no disclosure of a structure at all, and a second category where there's disclosure of some structure, and then the question is whether or not it's sufficient. So how does the court know to make that conclusion? Without any help from counsel, you just say, here, this is the case that's assigned to you, go ahead and read the patent? The same way this court and the courts, district courts throughout the country, rely on the specification on a daily basis to construe claims. The specification is the key. It is the key piece of evidence. They can arm wave and say, here's what happened in claim charts, where we're accused of infringement in every case that this case has ever invalidated a claim as being indefinite for means-plus-function. I would hazard a guess that in every one of those cases, and I know it's true for a lot of them like NOAA systems, the defendant didn't just sit there on their hands, they also did a claim chart. They can wave their hands all they want. The dispositive thing is this, Your Honor, they cannot identify an algorithm. You won't find an algorithm for any of them in their blue brief at all. Why? They point to a black box that's called a DTE. This court has time and again in the aristocrat case, in Blackboard, in Biomedina, and in NOAA systems, said no amount of expert witness testimony can make up for an absence of something in the specification. No, I don't think they've gone that far. Oh, I believe the court has gone that far in a number of these cases. Your argument is you could avoid the attorney argument thing by simply standing mute and letting the court figure this out, and having made no argument, you can't be accused of arguing it. Is that right? Theoretically, that's true, Your Honor. It's like claim construction. You point to the specification, and the court is certainly empowered and able to look at the specification. For them to say we presented no evidence is, to me, completely in the wrong direction. The most important piece of evidence that there could possibly be on this issue is the specification itself. And for them to keep criticizing us for not putting in some type of expert report when the specification doesn't disclose any algorithm, and when the district court specifically reviewed what they had and said it's circular. If you take scanning, it says go to the DTE. If you go to the DTE, what does it say? It says the DTE stands. It becomes pure functional claiming, which this court has said is not appropriate in the aristocratic case. Without remaining mute, it seems to me that Noah says that counsel can at least stand up and say, may it please the court, the specification discloses no algorithm. Is that not correct? Oh, absolutely. There's nothing wrong with attorney argument. What I'm trying to say is we're trying to marshal and shepherd, like hopefully I'm trying to do today. I'm trying to shepherd you through the evidence to help make a decision. What we did is we shepherded... There isn't any evidence. You just told us there isn't any evidence. All there is is attorney argument. I hope I've told you there's a specification, Your Honor. No, I didn't tell you there's the evidence. The evidence is the specification, Your Honor. When you look to what they say is the structure, something like the DTE is an empty black box. Your real argument is that we've crossed this bridge in earlier cases. That's correct. That's correct. We've crossed this bridge. And we've crossed it in other ways in other cases. Your Honor... Even before the prior cases were more rigorous in what was required. More recent cases have been less rigorous. Prior cases, in theory, control. The prior cases, in theory, do control. But we could go back a ways, Your Honor, to a WMS gaming kind of system, which tells you that the first thing you've got to do is identify an algorithm. If it's not there, you don't get to step two, Your Honor. I understand and I appreciate, Your Honor, I completely understand and appreciate that there might be divergent views once you identify something that's a structure as to how much is needed. And maybe the parties would get up and say, let's have some experts talk about that. But what I don't think is wrong or incorrect and where I don't think the court has gone in the wrong direction on this is the type of a situation like here, where if you were to accept their argument, that even getting it off the ground would allow you to engage under the guise of 112 paragraph 6, which we saw the last appeal on, under the guise of 112 paragraph 6, and it would become purely functional claiming. Here's what their argument is. I'll take scanning for change data as one example, Your Honor. Scanning for change data, what do they do? They point to the DTE. It's a made-up word. Let's talk about this case because this is a troubling point. They say that what happened was that the attorneys stood up, the defendants, and said there's no algorithm. That's right. Essentially in sad death. That's right. And they say, at the risk of oversimplification, they didn't meet their burden, and therefore we don't have to say anything. That's what they say. We think that's wrong. We think once we point to the specification and show that the only things that they even arguably say is structure, like a DTE is not an algorithm, we think we have met a burden of coming forward by clear and convincing evidence and showing the absence of something. And if they can't come back and at least show us where there's structure, then you don't get to step two. And that's what the cases say. It's just like the ACM situation. If I could finish my thought with Your Honor's blessing on the DTE issue, this identifies a problem, Your Honor. I agree with you that there could be different viewpoints on how much structure is needed in a means plus function. I totally understand and appreciate that. But I'll take one example of scanning for change data. They then say look at the DTE. And when you go to the specification, which is evidence, which couldn't be any more important as evidence, the DTE on scanning, all it tells you and all they point to is that it says that the DTE scans for change data. So you're back to the language of the claims. And as this court said specifically in the NOAA systems case, this type of purely functional language, which simply restates the function associated with the means plus function limitation, is insufficient to provide the required corresponding structure. I think that's the end of the story. I think the NOAA systems case got it exactly right. There they said that the plaintiff did not have the right to go in with expert reports. And they tried to on the summary judgment stage. And they said here's all the structure. And the court said no. They didn't get past step one. Step two, once you have a structure, may have a divergence of opinion. We think step one should be very clear. There is no algorithm. We have the argument. Okay. Thank you. All right. Thank you. We will hear from the other side. We will enlarge the time by the amount you've run over just to complete this point. To stay on the same line, if that's okay? Yeah. Mr. Moore says that the only thing we point to for the monitoring scanning step is the DTE. I'd like the court to please look at 869-72. There you will see a detailed explanation from our claim construction brief where we go through and say the specific structure is the DTE. And then we list a number of how that gets done in other words an algorithm, how that happens. And we specifically point out where that is. And you can look all the way to 872. We also say that another thing, a data collection site, which has a database and a publisher within it, and my understanding is that can be a specific structure or it can be a program structure, that that as well does the monitoring. And we give specific examples of that here. Now, we could have sat on our hands, but we did that in claim construction. The burden was never ours. And if you look at the case law, you look at Atman, Booty, even AeroTel, which is a non- What's that? What do you say about NOAA? I don't know how I can reconcile NOAA with the court, with the previous decisions of this court. So you would concede that NOAA is against you on that issue? I don't believe so. For this reason, for the reasons we set forth in the letter that you said came in May 2nd, and I apologize, I had forgotten about that. The reason that we don't fit into NOAA, I think NOAA is probably wrong given Atman, Booty, All Voice. But, it doesn't matter. Because we showed SAP, we showed the court specific structures, and we showed specific Where's one of the specific algorithms you point to? A specific one. Not just what the court called black boxes. Yeah, the court, okay, what the court did, I think that was an error too. The court said that the DTE was a black box based on argument made by SAP. They had no evidence that it was a black box. Other than the DTE, answer the question. Excuse me, Clay, I asked you a question. Yes, okay. Now, the court Just read out the beginning of one of the algorithms for me. I can tell you the sites are these Figures 1, Figure 1C, and E. The patent at Column 1, Line 64, Column 2, Line 57-58, Column 5, Line 62 Give me a page reference, please. That's in the patent, which is Your Honor, if you'll allow me to just The patent starts at 8-59 And then another site is to Column 6, Lines 44-48 I'm looking at your appendix here. This really is so confusing. I'm looking at page 870. 870? Yes. That you've referred to. There you say one structure corresponding to the means for monitoring function. And then you say the structure is the black box. Is that right? No. Essentially, it's the data transfer. We say that's the specific structure. Okay. Well, what infrastructure? What's that? I'm sorry, Your Honor, I didn't get that. No, please. I mean, these are where the gaps seem to arise in the argument That is an insufficient response. Here, it says one structure corresponding to the monitoring function is the data transfer engine. The data transfer engine monitors the local systems continuously and takes whatever information is available. If the question is other than DTE, can you point to any specific structure algorithm? I want you to read me one in the record. Don't cite something. No, I just wanted to cite those. Now, if you look at it, I'm going through the sites if that's okay. I apologize. I just want to make sure the record was clear. I didn't mean to. Okay. So, first thing is the second line. The data transfer engine monitors the local system continuously and takes whatever information is available. That is a method by which it monitors. That's what you have to judge whether one of the ordinary school in New York reading that, that specific prose on whether or not that is monitoring. That's really quite bare bones for structure, isn't it? It may be, but we don't know whether or not they have not presented anyone that said that that would not be the case. Because the next sentence says may also be implemented in software. Correct. Even in the cases that may or may not draw on some difficult lines, it's usually a sentence or two as to what the software is supposed to do. Yes, I've seen it as much as one sentence. But that's just one example. And the other ones... Okay. And then if you go down to the paragraph that is the last starting of the last full paragraph on 870. In one embodiment, each supply chain site is scanned at regular intervals for changed data. That's 2 colon 57 to 58. Then the data transfer engine monitors local systems continuously and takes whatever information is available. The next one is in one embodiment. The DTE looks for changes to data and uploads new data to the data collection site upon finding a change. The next one on 871. The process can be performed regularly upon the expiration of a predetermined time period or, for example, when a change in the data is detected at the supply chain site. Those are the four that I think I listed. Yes, those are the four instances of PRO's specific information that says this is how it's done. Is it fair to say that the debate and what influenced the district court is whether they were obliged to come forward with evidence, testimony, that this is inadequate before you were obliged to come forward with evidence or testimony that any fool, any ordinary programmer would know how to implement this? And since neither of you did this, the district court felt that the flaw, the deficiency, was on your part. And your position is that since they didn't meet a prima facie burden through testimony, that they should lose. Yes, our position is we identify all of this, and I apologize for reading it awkwardly, but those are the sorts of things, and then we identify even more things on the DCS as being algorithms. Let me ask you this, Mr. Benson. Under the authorities, as you read them, whether you don't like NOAA or not, supposing somebody candidly comes in with an expert who says, I looked at this and there is no algorithm. Does the other side have to go forward? If the defendant or the challenger comes in and has an expert who says, I read those algorithms, those aren't algorithms. No, if the patentee comes forward. No, the patentee. The patentee comes in. The patentee says at the outset, we recognize there's no structure here, there's no algorithm, but that's besides the point, there's the burdens on the elected infringer. Then what? No, if they can see, that would be a concession, that there is no structure. But you have to then get into in-rate tax if we're going to go in that direction. But if there is a concession, an admission by the patent owner that no structure exists, then they're in trouble. That's not what happened here. We pointed to structure, we pointed to algorithms for corresponding structure. So there's some circumstance in which you think NOAA might be valid. No, it could be only, I don't know that NOAA is valid because there is a clear and convincing standard. 282 says there's a clear and convincing standard. I for I, the Supreme Court says there's a clear and convincing standard. And all of those cases say that it's the challenger that must come forward first with that evidence. But the evidence he can hand is that candid statement by the patentee's expert saying, search us, we don't have it. If that's the case, then I think there's a concession and there would be evidence that there is no structure. No such evidence exists here. On personal jurisdiction. Okay, you can have a sentence or two on personal jurisdiction. The idea that there is a concession once a patent owner files an infringement action to nationwide personal jurisdiction is wrong. And it's wrong because Hildenbrandt says it's wrong. Mr. Hildenbrandt filed his action, his personal, excuse me, patent infringement action in Colorado a week after Stack filed the D.J. action in Ohio. That action was transferred to the Southern District of Ohio and the District of Ohio decided that they had personal jurisdiction. This court reversed that and said that the District of Ohio had to have personal jurisdiction over Mr. Hildenbrandt's both his patent infringement action and the D.J. action. And without it, the Southern District of Ohio could not enter a binding judgment against Mr. Hildenbrandt. So the fact that a litigant, a patent owner, files a patent infringement action in a district does not mean that that patent litigant has conceded or admitted or consented to jurisdiction wherever that case could have brought. You have to look at personal jurisdiction first. That's what the Supreme Court says and that's clear. Okay. That's all I have. Thank you. We'll have to figure that out. Any more questions? No, ma'am. Okay, thank you, Mr. Benson. And Mr. Moore, I'm going to take this. Thank you, Your Honor.